UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUTO-OWNERS INSURANCE
COMPANY,

    Plaintiff,

v.                                            Case No: 8:23-cv-1803-KKM-NHA

CHC VI, LTD. and STEVEN FOSTER,
on behalf of himself and others similarly situated,

    Defendants.
_____

## ORDER

Plaintiff Auto-Owners Insurance Company moves for summary judgment against Defendant CHC VI, Ltd., on its declaratory judgment action. (MSJ) (Doc. 37); Compl. (Doc. 1). After reviewing the motion, the defendant's response, (Resp.) (Doc. 40), the parties' statement of undisputed facts, (JSOF) (Doc. 47), the reply, (Doc. 45), and the record, I grant Auto-Owner's motion.

### I. BACKGROUND

Auto-Owners insured CHC VI under a Commercial General Liability policy. MSJ ¶ 3; (Doc. 1-2). CHC VI owns Angler's Green community located in Polk County, Florida. MSJ ¶ 6. Steven Foster, a resident of Angler's Green, filed a separate class action suit in Florida state court against CHC VI. Underlying Compl. (Doc. 1-10).[1] Foster alleges that the residents of Angler's Green have been "exposed to hazardous substances, including, but not limited to, gamma radiation" because

---

[1] The parties agree that the Underlying Complaint is the operative complaint for this action. JSOF ¶ 1.

of the phosphate strip mining that previously occurred there. *Id*. ¶¶ 7, 31. The "polluting of and waste disposal on the mined lands" was "incomplete[ly] remediat[ed]," as the land was not returned "to its original condition prior to mining." *Id*. ¶¶ 7–8.

CHC VI allegedly "knew, or should have known," about the hazardous substances from the previous mining activities. *Id*. ¶ 5. But CHC VI "failed to properly remediate [it]" or warn Foster or the other class members "of the significantly elevated cancer risks posed by the presence of gamma radiation and other contaminants." *Id*. ¶¶ 105, 128. Foster therefore seeks damages from CHC VI "for leasing defective lots" to the residents of Angler's Green. *Id*. ¶ 5. Foster alleges that the Angler's Green properties have been damaged due to the presence of the hazardous conditions "on, in and around their properties." *Id*. ¶ 10. The residents have suffered personal injury "in the form of [the] increased risk of latent disease." *Id*. ¶ 118.

CHC VI sought Auto-Owners to defend it in the Underlying Action based on the policy. Compl. ¶ 16. In relevant part, the policy provides coverage when the "insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.' " (Doc. 1-2) at 112. " 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id*. at 118. " 'Property damage' means . . . [p]hysical injury to tangible property, including all resulting loss of use of that property; or . . . [l]oss of use of tangible property that is not physically injured." *Id*. at 120. Auto-Owners seeks a declaratory judgment that there is no coverage for CHC VI under the policy for the Underlying Action. *See* Compl.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* FED R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A moving party is entitled to summary judgment when the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant bears the initial burden of informing the court of the basis for its motion and identifying those parts of the record that show an absence of a genuine issue of fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When that burden is met, the burden shifts to the nonmovant to prove that there is a genuine issue of fact that precludes summary judgment. *Id.* The nonmoving party must "go beyond the pleadings" and point to evidence of a real issue for trial. *Celotex*, 477 U.S. at 324 (quotation omitted). "A mere 'scintilla' of evidence" does not suffice; "there must be enough of a showing that the jury could reasonably find for [the nonmovant]." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quotation omitted). In reviewing the evidence, the Court draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

## III. ANALYSIS

Under Florida law, an insurer's duty to defend an insured in an action "must be measured by the allegations of the complaint." *Castro v. Allstate Ins. Co.*, 724 So.

2d 133, 135 (Fla. 3d DCA 1998) (per curiam) (quoting *Aetna Cas. & Sur. Co. v. Miller*, 550 So. 2d 29, 30 (Fla. 3d DCA 1989) (per curiam)). "[T]he theories advanced and labels used in a complaint are subordinate to the facts alleged for the purpose of determining the duty to defend." *Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1145 (11th Cir. 2011) (per curiam) (quoting *Harris Corp. v. Travelers Indem. Co.*, No. 96–166–CIV–ORL–19A, 1998 WL 1657171, at *2 (M.D. Fla. Mar. 19, 1998)).

Except when there is a "genuine inconsistency, uncertainty, or ambiguity," insurance contracts should be interpreted according to the plain language of the policy. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)). Where the complaint shows that there is no coverage or that a policy exclusion applies, the insurance company has no duty to defend. *See Fed. Ins. Co. v. Applestein*, 377 So. 2d 229, 232 (Fla. 3d DCA 1979). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms[,] whether it is a basic policy provision or an exclusionary provision." *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996) (en banc). In other words, in the absence of ambiguity, "a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." *Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013)

The policy, like many standard insurance policies, includes a pollution exclusion. (Doc. 1-2) at 113; *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1137 (Fla. 1998) ("[T]he language of this pollution exclusion, sometimes called the absolute pollution exclusion, is in widespread use throughout the country."). The pollution exclusion reads in full:

> This insurance does not apply to . . . "[b]odily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants . . . [a]t or from premises you own, rent or occupy.

(Doc. 1-2) at 112–13. "Pollutant" is defined as:

> [A]ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Id*. at 113. The Florida Supreme Court has held that "the [standard] pollution exclusion clause is clear and unambiguous," *Deni Assocs.*, 711 So. 2d at 1138, and therefore "it should be enforced according to its terms," *Hagen*, 675 So. 2d at 965. Auto-Owners contends that because "all the causes of action . . . arise from the 'polluting of and waste disposal on [Angler's Green],' " the pollution exclusion exempts the Underlying Action from coverage under the policy. MSJ ¶ 28.

I need not decide whether Foster's allegations constitute claims for "bodily injury" or "property damage" and thereby fall inside the scope of the policy because the pollution exclusion would apply regardless. The Underlying Complaint alleges "contamination" of property owned by CHC VI via the "discharge" of hazardous chemicals, including "waste." Underlying Compl. ¶¶ 5, 122, 128. Based on the "plain language of the policy" in conjunction with the allegations, these allegations fall squarely within the pollution exclusion in the policy. *Taurus Holdings*, 913 So. 2d at 532; *see Mt. Hawley Ins. Co. v. Dania Distribution Ctr. Ltd.*, 513 F. Appx. 890, 893–94 (11th Cir. 2013) (per curiam) (affirming summary judgment in favor of insurer under standard pollution exclusion clause where residents claimed they suffered bodily injury and property damage from exposure to various chemicals on their property); *Cont'l Cas. Co. v.*

*City of Jacksonville*, 654 F. Supp. 2d 1338, 1343–48 (M.D. Fla. 2009) (granting summary judgment in favor of insurer under standard pollution exclusion clause).

CHC VI's arguments to the contrary are not convincing. Without citing caselaw, CHC VI argues that the pollution exception does not apply in this situation because the pollution is alleged to have come from the "surrounding environment" and not "from" CHC VI's property. Resp. at 14. But the exclusion applies to pollution "*at* or from" the property. (Doc. 1-2) at 113 (emphasis added). The "at" suggests that the pollution can originate elsewhere, and regardless, the Underlying Complaint alleges that Angler's Green exists on the formerly mined land. Underlying Compl. ¶¶ 7, 30 (the "ultimate use" of the "mined lands" is "residential real estate in the Angler's Green [community]" and CHC VI failed to disclose that Angler's Green is "on formerly mined lands").

CHI VI also argues the pollution exclusion does not apply because the damages sought by the Underlying Complaint did not arise out of the release of pollutants only, but "rather the concealment, mining, and ineffective remediation." Resp. at 14–15. But given that the Florida Supreme Court has explained "that the phrase 'arising out of' is not ambiguous" and "[s]hould [b]e [i]nterpreted [b]roadly," *Taurus Holdings*, 913 So. 2d at 532, 539, these damages "arise directly out of the alleged discovered pollution," *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008) (holding that the plaintiff's claims for remediation, removal of debris, and monitoring fall within the pollution exclusion because they arose out of the alleged pollution); *see Sierra Auto Ctr., Inc. v. Granada Ins. Co.*, 317 So. 3d 1220, 1222 (Fla. 3d DCA 2021) ("The term 'arising out of' . . . means 'originating from,' 'having its origin in,' 'growing

6

out of,' 'flowing from,' 'incident to' or 'having a connection with.' " (quoting *Taurus Holdings*, 913 So. 2d at 539)). The only reason the "concealment, mining, and ineffective remediation" are allegedly injurious to the underlying plaintiffs is because of the original pollution and contamination. *See* Underlying Compl. ¶ 56 (explaining that "[plaintiffs] have incurred damages as a result of [the pollution] and contamination of their property . . . by mining and inadequate remediation" as well as concealment).

## IV.   CONCLUSION

Because "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law," Auto-Owners is entitled to summary judgment. Fed R. Civ. P. 56(a).

Accordingly, the following is **ORDERED**:

1. Plaintiff Auto-Owners Insurance Company's Motion for Summary Judgment (Doc. 37) is **GRANTED.**

2. The Clerk is directed to **TERMINATE** any pending deadlines, enter **JUDGMENT** in Auto-Owners Insurance Company's favor, and **CLOSE** this case. The judgment shall read: "Auto-Owners Insurance Company does not owe coverage, including a duty to defend, to CHC VI, Ltd., relating to *Christine Cruz v. Mosaic Global Operations*, 20-CA-006826, No. 2022-CA-00179 (Fla. 13th Cir. Ct. Aug. 27, 2020)."

**ORDERED** in Tampa, Florida, on December 16, 2024.

Kathryn Kimball Mizelle
United States District Judge